On December 22d 1924, the defendants husband and wife executed a mortgage to secure the payment, one year thereafter, of $1,000. On the 10th day of February, 1926, the principal sum not having been paid, and then almost two months overdue, this bill was filed. The answer admits the execution of the encumbrance and all of the other facts set forth in the bill except the statement therein that $1,000 was due, and alleges that the true debt intended to be secured was only $800, thus bringing the transaction within the penalty expressed in the second section of the "Act against usury." 4 Comp. Stat. p. 5704.
The complainant has produced two checks dated, respectively, November 17th, 1924, and December 23d 1924, each for the sum of $350, drawn by the complainant to the order of the defendant husband, and by him cashed. As to these payments, totalling $700, no dispute exists. In addition to this sum it is undisputed that the defendants were further indebted to the complainant in the sum of $105 for arrears of interest. The balance of the $1,000 consideration for the mortgage the complainants says was made up in this way: After the mortgage had been executed the defendants accompanied him to a clothing store conducted by him, where the husband selected a quantity of personal apparel, the value of which was added to the already-existing indebtedness of $805, and the balance between that total and $1,000 was paid to the husband in cash. These facts were corroborated by the testimony of his wife and son, but are denied, so far as the purchase of clothing and payment of cash are concerned, by the defendants.
The defendants make it clear that there had been either two or three previous mortgage transactions in which the *Page 694 
complainant had played some part, and the defendant husband had in each instance been a borrower. Each time it appears that more was paid by the mortgagor than would account for the legal interest. But in all of these transactions the complainant seems to have acted as a broker in procuring the loans for the defendants and not the financial party to the various dealings. It is true that much was made of one mortgage in which the complainant borrowed from one of his relatives and took the mortgage in his own name, but I think it is clear that he considered the money to be, as it was equitably, that of the relative and not his own, and it is not contended that the act on usury or any other law prevents a broker from charging a fee for his services. It is not without significance that while the complainant stoutly denied the charge of usury in the encumbrance under consideration he very frankly admitted the compensation he had received in those transactions where he secured another to come to the financial assistance of the defendants.
In the placing of the mortgages, other than the one which is the basis of this suit, the attempt was made to show that the complainant had received more in the way of a fee than five per cent. of the loan which he admitted. In each instance, however, he explained the apparently higher percentage by showing that the creditor had charged the borrower with the amount of interest the former lost by withdrawing funds from savings accounts before the then next interest payment day of the bank.
Two other matters of great importance were put in evidence: One was the fact that after the complainant's solicitor wrote to Mrs. Colyer, the defendant who actually held title to the lands upon which the mortgage was a lien, demanding payment of the principal sum after it became due, her solicitor applied to the former for additional time, and not a word, apparently, was then said about usury. The other relates to the very acute state of the financial condition of the defendant — so precarious, indeed, that a check of one *Page 695 
of them was admitted in evidence, having been returned to the complainant by his bank with a small printed form pasted thereon by the latter and a check mark opposite the said item, "Insufficient Funds." These facts, of course, speak for themselves and require no argument, as neither does other proof showing financial embarrassment at and after the date of maturity of the mortgage.
One who charges usury against another should be prepared to abundantly make proof thereof. It was said by the court of errors and appeals, in Taylor v. Morris, 22 N.J. Eq. 606 (at p.612), that not only is the burden of proof in a case such as this upon the defendant, but that it must be sustained "by such preponderance of evidence as establishes the truth of the allegations on which it depends, beyond a reasonable doubt." Against all of the foregoing facts and circumstances the defendants ask the court to convict the complainant upon the single circumstance of the irregularity in the payment of a part of the consideration of the mortgage. Their counsel skillfully accentuated the fact that neither the complainant, his wife, nor his son could give any estimate as to the value of the clothing that entered into the transaction or the amount of cash necessary to complete it. It is true, at first blush, this might appear suspicious, but upon more mature deliberation it rather favors the complainant, because it is fair to assume that a shopkeeper, more than a year after a purchase in his store has been made, would be unable to remember the amount of the sale. During the intervening period hundreds if not thousands of such sales would have been consummated, and it would require a memory touched with genius to carry any clear recollection over such a long period of time unless it had been the sale of a single article and connected with some unusual circumstance affecting the sale itself. If this story was made out of whole cloth, it is more likely that, at the same time it was conceived, all of the accompanying trimmings would have been invented, rehearsed, and committed to memory. Furthermore, it is admitted by the husband that after the execution of the *Page 696 
mortgage he did go to the complainant's store, and to this extent he corroborates the mortgagee, inasmuch as he makes no explanation of his reason for going there.
In giving his testimony, the complainant's son became hopelessly involved when cross-examined as to the date of the purchases made by the defendant husband after the mortgage had been executed. It is clear that he confused the date upon which the first check for $350 was given with the date about a month thereafter, when the second check was delivered to the defendants and the security delivered to the complainant. The rest of his testimony, however, was credibly delivered, and I am not inclined to disregard it because of this slip which is so frequently made by honest witnesses who wish to impress others with the clarity of their memories on the subject of dates. It is also important in this respect to say that there was no conflict of any moment concerning the dates of these transactions.
I will advise a decree in conformity with the prayer of the bill.